# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| PANASERVE, LLC, et al., | 1:19-cv-16496-NLH |
| Plaintiffs, | **OPINION** |
| v. | |
| TRION SOLUTIONS, INC., et al., | |
| Defendants. | |

---

| | |
|---|---|
| DANEKER & DEAN CONSULTING GROUP LLC, | 1:20-cv-13838-NLH |
| | **OPINION** |
| Plaintiff, | |
| v. | |
| TRION SOLUTIONS, INC., et al., | |
| Defendants. | |

---

**APPEARANCES:**

PAUL W. VERNER
FIVE GREENTREE CENTRE
525 ROUTE 72 NORTH - SUITE 104
MARLTON, NJ 08053

       *On behalf of Plaintiffs*

DANIEL I. GOLDBERG
OFFIT KURMAN
590 MADISON AVENUE -6TH FLOOR

NEW YORK, NY 10022

> *On behalf of Intervenor Plaintiff New York Livery Leasing, Inc.*

DANIEL JONATHAN MCGRAVEY
CLARK HILL PLC
2005 MARKET STREET - SUITE 1000
ONE COMMERCE SQUARE
PHILADELPHIA, PA 19103

JONATHAN DANIEL KLEIN
CLARK HILL PLC
2001 MARKET STREET - SUITE 2620
PHILADELPHIA, PA 19103

> *On behalf of Defendants*

**<u>HILLMAN</u>, District Judge**

Before this Court is: (1) Defendants Trion Solutions, Inc. ("Trion"), Trion Solutions I, Inc. ("Trion I"), and Trion Solutions II, Inc.'s ("Trion II") (collectively "D&D Defendants") Motion to Transfer Venue or Alternatively Dismiss the Complaint, Case No. 20-13838, ECF No. 15; (2) Defendants Trion, Trion I, Trion II, Trion Solutions III, Inc. ("Trion III"), Trion Insurance Group, Inc. ("Trion IG"), Trion Staffing Solutions, Inc. ("Trion SS"), Bonner C. Upshaw, III ("Mr. Upshaw"), David L. Stone ("Mr. Stone"), Craig Vanderburg ("Mr. Vanderburg"), Mark Davidoff's ("Mr. Davidoff") (collectively "Panaserve Defendants") Motion to Transfer Venue or Alternatively Dismiss the Amended Complaint, Case No. 19-16496, ECF No. 40; (3) Plaintiff Daneker & Dean Consulting Group LLC's ("Daneker & Dean") Cross-Motion to Consolidate and For Extension of Time to File the Second Amended Complaint <u>Nunc Pro Tunc</u>, Case

No. 20-13838, ECF No. 20; [1] and (4) Plaintiffs Panaserve, LLC

("Panaserve") and Paul W. Hopkins' ("Mr. Hopkins") ("Panaserve

Plaintiffs") Motion to Consolidate and For a Trial Preference,

Case No. 19-16496, ECF No. 48.  For the reasons detailed below,

D&D Defendants and Panaserve Defendants' Motions to Transfer

Venue to the Eastern District of Michigan will be granted and

Daneker & Dean's Motion for Extension of Time to File the Second

Amended Complaint <u>Nunc Pro Tunc</u> will also be granted.[2]

<u>**BACKGROUND**</u>

### a. Parties at Issue in the Relevant Actions

#### a. <u>D&D</u> Action

Daneker & Dean filed its Complaint against the D&D

Defendants on October 2, 2020 (the "<u>D&D</u> action"), which can be

found under docket number 20-13838.  Daneker & Dean is a limited

liability company formed in Pennsylvania and has its principal

of place of business in New Jersey.  (Case No. 20-13838, ECF No.

10 ¶3.)  Trion is incorporated and has its principal place of

business in Michigan.  (<u>Id.</u> ¶5; ECF No. 16 ¶7.)  Daneker & Dean

contends "Trion engages in continuous and systemic business in

---

[1] Although, this Court gave Daneker & Dean the opportunity to
file a reply brief in support of its Cross-Motion to
Consolidate, Case No. 20-13838, ECF No. 25, no reply has ever
been filed.

[2] In light of the Court's ruling herein, the Court does not reach
the merits of the Motions to Consolidate the two actions filed
on behalf of Daneker & Dean and Panaserve Plaintiffs as well as
Mr. Hopkins' Motion for Trial Preference.

the State of New Jersey as a 'professional employer organizations' ('PEO') also known as an employee leasing company" from both its Florida and Michigan offices. (ECF No. 10 ¶6). Similar to Trion, Trion I and II are both incorporated and have their principal places of business in Michigan. (Case No. 20-13838, ECF No. 16 ¶¶10-11.) Trion I and Trion II are both wholly owned subsidiaries of Trion. (Case No. 20-13838, ECF No. 10 ¶15.)

Daneker & Dean contends Trion I and II are the "registered PEO employers of the employees who are referred to Defendants by Plaintiff under a Broker Agreement" and "[t]o the extent that Trion I and Trion II hold monies and fees from which Plaintiff's commissions under the Agreement are paid, they are culpable to Plaintiff in this action." (Id. ¶10.)

### b. **Panaserve** Action

On August 19, 2019, the Panaserve Plaintiffs filed an Amended Complaint against the Panaserve Defendants (the "Panaserve action)," which can be found at docket number 19-16496. Panaserve is a New Jersey limited liability company and has its principal place of business in New Jersey. (Case No. 19-16496, ECF No. 20 ¶5.) Mr. Hopkins is an individual who is a citizen of New Jersey. (Id. ¶6.)

As explained above, Trion, Trion I, and Trion II are Michigan corporations with their principal places of business in Michigan. Mr. Hopkins further alleges Trion also has a Florida

4

headquarters and that Trion's principal place of business is located in Florida, which is where the sales operations occurred from that are relevant to this action. (Case No. 19-16496, ECF No. 44-1 ¶29.)[3]  Trion III, Trion IG, and Trion SS, wholly owned subsidiaries of Trion, are also Michigan corporations with their principal place of business in Michigan. (Case No. 19-16496, ECF 40-4 at ¶3-4.)  Mr. Upshaw, Mr. Stone, and Mr. Vanderburg are individuals who are citizens of Michigan.  (Id. at ¶¶11-16.) Finally, Mr. Davidoff is an individual who is a citizen of Florida.  (Id. at ¶18.)

### b. The Relevant Agreements

#### a. D&D Action

Daneker & Dean entered into the Broker Agreement with Trion on or about May 1, 2018. (Case No. 20-13838, ECF No. 10 ¶10.) The parties entered into the Broker Agreement to build the clients of Trion and the PEO subsidiaries of Trion, Trion I, and Trion II.  (Id. ¶22.)  Under the Broker Agreement, Trion appointed Daneker & Daneker as a "non-exclusive representative

---

[3] "In deciding a § 1404(a) transfer motion, a court may consider evidence external to the complaint. 'Appropriate supporting evidence includes documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties.'" Thompson v. Equifax Info. Servs., LLC, No. 17-902 2018 U.S. Dist. LEXIS 44625, *7, 2018 WL 1381135 n.3 (E.D. Pa. Mar. 19, 2018) (quoting Fellner v. Phila. Toboggan Coasters, Inc., No. 05-2052, 2005 U.S. Dist. LEXIS 23839, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005)). Accordingly, this Court may consider the affidavit of both James E. Baiers and Paul Wallace Hopkins.

of Trion" to solicit potential clients for services offered by

Trion. (Id. at 23 ¶1.)  Pursuant to the Broker Agreement, Trion

is required to pay a "Broker Fee" to Daneker & Dean for clients

procured by Daneker & Dean and accepted by Trion for as long as

the client remains with Trion. (Id. at 25 ¶3.2.)  The Broker

Agreement also includes a forum-selection clause under a section

titled "Controlling Law, Jurisdiction and Venue," which states:

> This Agreement shall be construed and interpreted
> in accordance with the laws of the State of Michigan
> without regard to conflict of law principles. The
> Company and the Participant each irrevocably
> consents to the exclusive jurisdiction of the
> courts of the State of Michigan located in the
> County of Oakland, and of the United States
> District Courts for the Eastern District of
> Michigan for the purposes of any suit, action, or
> proceeding relating to or arising out of this
> Agreement and irrevocably waives, to the fullest
> extent it may effectively do so, any objection it
> may have to the jurisdiction or venue of any
> proceeding in any such court, and the defense of
> any inconvenient forum to the maintenance of
> any proceeding in any such court.

(Id. at 29 ¶9.7.)

### b. **Panaserve** Action

On or about August 25, 2014, on behalf of Panaserve, Mr.

Hopkins negotiated and then entered into a Strategic Alliance

Agreement ("SAA") with Trion. (Case No. 19-16496, ECF No. 20

¶25.)  Under the SAA, Panaserve was appointed as a non-exclusive

agent of Trion and had the duty to solicit new clients for

Trion. (Id. at 42 ¶¶1-2.)  The SAA was specifically designed

for purposes of being performed by the Panaserve Plaintiffs in

6

New Jersey as well as other Northeastern states and did not include performance in Michigan. More specifically the SAA provides that: "Trion agrees that it will not enter into a Strategic Alliance Agreement with any employee, broker or independent contractor located in any of the following States without the written acknowledgement of Panaserve: NJ, PA, NY, CT, MA, DE, MD, VA, WV." (<u>Id.</u> at 55 ¶2.3.6.)

Moreover, the parties agreed that Panaserve would have a right to an accounting and that Trion would maintain sufficient documents and records. (<u>Id.</u> at 43-44 ¶2.2.) In exchange for Panaserve's services, Trion agreed to pay Panaserve a percentage of the gross profit margin from its invoices by clients that Panaserve introduced to Trion and which entered into a written service agreement with Trion and have paid their invoices to Trion. (<u>Id.</u> at 45 ¶¶3.1-3.2.) The commission Panaserve was owed would increase if the annual gross payroll of all Panaserve clients signed by Trion exceeded $25 million. (<u>Id.</u> at 45 ¶3.2.) "All fees paid to Panaserve were processed by Trion in Michigan and paid from its Michigan office" and "all monthly Gross Profit Margin reports of the clients obtained by Panaserve that were used to calculate the fees owed to Panaserve were also created and processed by Trion at its Michigan office." (Case No. 19-16496, ECF No. 40-4 ¶21.) The SAA also includes a choice-of-law provision, which explains Michigan law governs any dispute

relating to the SAA.  (Case No. 19-16496, ECF No. 20 at 50 ¶8.7.)

### c. The Plaintiffs' Allegations and Causes of Actions

#### a. D&D Action

Prior to Daneker & Dean entering into the Broker Agreement, Daneker & Dean first became known to D&D Defendants through its sub-broker relationship with Panaserve Plaintiffs.  (Case No. 20-13838, ECF No. 10 ¶23.)  Daneker & Dean previously had an oral contract with Panaserve whereby Daneker & Dean would refer employer clients to Panaserve, which in turn were referred to D&D Defendants under Panaserve's SAA with Trion for placement with the Defendant subsidiary PEOs Trion and Trion II.  (Id. ¶24.)  Daneker & Dean alleges "[g]iven the strength of the Trion PEO, coupled with D&D's long-term relationship with Mr. Hopkins, together with the Panaserve/Trion commission structures, it was profitable and in D&D's best interest to place D&D accounts through Panaserve for Trion." (Id. ¶25.)  Daneker & Dean further alleges that Trion, was aware of D&D's contract arrangement with Panaserve.  (Id. ¶29.)  Pursuant to the contract between Daneker & Dean and Panaserve, the commissions paid by Trion to Panaserve for Daneker & Dean clients would be split.  (Id. ¶29.)

In 2017, Panaserve brought in several new accounts to D&D Defendants, mostly through Daneker & Dean and another agent in New Jersey, and some of the new accounts were successfully placed with Trion in 2018. (Id. ¶31.)  For these new clients,

Mr. Hopkins and Daneker & Dean modified the commission arrangement to allow Daneker & Dean to receive 50% of the Panaserve commission as a split. Daneker & Dean contends this modification was done "[b]ecause D&D and Panaserve contemplated at that time of possibly writing a significant amount of new business if Trion [sic]." (Id. ¶32.)

Thereafter, D&D Defendants started failing to pay Panaserve's commission earnings, which foreseeably affected D&D's commissions. (Id. ¶ 32.) As a result of this, Panaserve could no longer meet its verbally agreed payment obligations to Daneker & Dean. (Id. ¶35.) Following this, Daneker & Dean directly complained to Trion, through officer Mr. Davidoff, regarding Panaserve LLC's failure to pay their proper commissions on Daneker & Dean's new accounts underwritten through Panaserve. (Id. ¶36.) In response, Mr. Davidoff then solicited Daneker & Dean and offered Daneker & Dean a direct contract with Trion, which would essentially cut out Panaserve entirely on the new accounts Daneker & Dean was attempting to place through Panaserve for 2018. (Id. ¶37.) In addition, Mr. Davidoff solicited Daneker & Dean directly for any additional new accounts from that date, starting April of 2018, going forward. (Id. 38.)

Moreover, D&D Defendants offered to Daneker & Dean the choice of transferring over to Trion all of Daneker & Dean's existing clients which were being written through Panaserve,

LLC.  (Id. ¶39.)  Following this, Daneker & Dean entered into
the Broker Agreement with Trion.  (Id. 40.)  Daneker & Dean
alleges that throughout 2018 and into 2019, Mr. Davidoff
continued to attempt to induce Daneker & Dean to further breach
its contract with Panaserve, LLC by going directly with Trion
with additional new business.  (Id. 42.)

Daneker & Dean further contends that in early 2018 D&D
Defendants tortiously interfered with Daneker & Dean's
prospective business. (Id. ¶¶43-53.)  Moreover, D&D Defendants
allegedly breached the Broker Agreement, which required
commissions to be paid to Daneker & Dean. (Id. ¶54.)  As a
result of the foregoing, Daneker & Dean filed its complaint
asserting the following causes of action against D&D Defendants:
(1) Specific Performance; (2) Breach of Contract; (3)
Intentional Interference with Prospective Economic Advantage;
(4) Accounting; and (5) Breach of Covenant of Good Faith.

### b. **Panaserve** Action

Panaserve Plaintiffs first allege that almost immediately
after the SAA was signed "certain disputes arose which indicated
Trion would stoop low to acquire Panaserve's clients directly
and avoid payment of commissions to Panaserve."  Panaserve
argues this first occurred when Mr. Davidoff rejected
"Panaserve's largest account, a trucking concern named Senior
Transportation."  (Case No. 19-16496, ECF No. 20 ¶¶41-45.)
Panaserve Plaintiffs further alleges Panaserve Defendants

fraudulently and in breach of the SAA manipulated Panaserve's client loss runs to retain more money under the SAA. (Id. ¶¶46-59.)

Panaserve Plaintiffs allege the SAA was also breached by the Panaserve Defendants continued rejection of every new trucking client that Panaserve presented for underwriting in an effort "to ensure that Panaserve was not paid commissions for hitting the $25 Million mark and to muddy up the already murky paperwork on this critical issue." Panaserve Plaintiffs argue that despite Trion's constant rejection of the new trucking business from Panaserve, Panaserve still had year end statements that demonstrated its gross payrolls exceeded $25 million. Despite this, Trion has still not honored the 60% gross profit split as required by the SAA. (Id. ¶¶60-68.) In addition, Panaserve Plaintiffs allege Mr. Davidoff and Mr. Vanderburg induced breaches of Mr. Langer and Mr. Maconaghy agents' contracts, with Maconaghy's breach related to the D&D action. (Id. ¶69-82.)

More specifically, Panaserve Plaintiffs allege Mr. Davidoff and Mr. Vanderburg "attempted to induce [Panaserve's sub-agents] Lagner and Maconaghy to breach their agent' contracts with [Mr. Hopkins] and to go direct with Trion with additional new business." Furthermore, Mr. Davidoff and Mr. Vanderburg made "continued statements to Langner and Maconaghy that they intended to drive Panaserve out of the Trion Contract and to

starve Panaserve into a position where it will be destroyed, and [Mr. Hopkins] clients will be taken in by Trion." (<u>Id.</u> ¶81.)

Panaserve Plaintiffs then provide detailed allegations which explain various instances in which Panaserve Defendants tortiously interference with Panaserve's future business. (<u>Id.</u> ¶¶83-101.) Panaserve Plaintiffs then conclude by explaining Mr. Vanderburg has "manufactured reasons for reducing Panaserve's commissions" and that this has resulted in Panaserve's agents being in an uproar as they await payments from such commissions and direct damages inflicted upon Panaserve Plaintiffs. (<u>Id.</u> ¶¶105-111.)

As a result of the forgoing, Panaserve Plaintiffs filed suit against Panaserve Defendants alleging the following causes of actions: (1) Specific Performance against Trion; (2) Breach of Contract against Trion; (3) Intentional Interference with Contractual Relations against Trion, Trion I, Trion II, Trion III, Trion IG, Trion SS, Mr. Vanderburg, and Mr. Davidoff; (4) Intentional Interference with Prospective Economic Advantage against Trion, Trion I, Trion II, Trion III, Trion IG, Trion SS, Mr. Vanderburg, and Mr. Davidoff; (5) Accounting against Trion, Trion I, Trion II, Trion III, Trion IG, and Trion SS; (6) Breach of Covenant of Good Faith against Trion, Trion I, Trion II, Trion III, Trion IG, Trion SS; and (7) <u>Prima Facie Tort</u> against Mr. Vanderburg and Mr. Davidoff.

**DISCUSSION**

**A. Subject Matter Jurisdiction**

This Court exercises jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties in each individual action.

**B. Legal Standard**

When a matter is filed in a proper venue, a federal district court may transfer the case to a different venue pursuant to 28 U.S.C. § 1404(a).  In re McGraw-Hill Global Educ. Holdings LLC, 909 F.3d 48, 57 (3d Cir. 2018).  Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Analysis of whether a transfer is appropriate under § 1404(a) is flexible, and based on the unique facts of the case.  Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993).

The Court of Appeals for the Third Circuit has provided interest factors, both public and private, for a court to consider when undertaking analysis of whether to transfer under § 1404(a).  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  The private interest factors are: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of

the parties; (5) the convenience of the witnesses; and (6) the location of books and records.  Id.

The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty from court congestion; (4) local interest in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases.  Id. at 879-80.

A forum selection clause "may be enforced through a motion to transfer under [Section] 1404(a)."  Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 59 (2013). "Mandatory forum selection clauses are entitled to a presumption of enforceability."  Shah v. Wellmark Blue Cross Blue Shield, No. 16-2397, 2017 WL 1186341, at *1 (D.N.J. Mar. 30, 2017) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)). "The presumption can be overcome upon a demonstration of 'extraordinary circumstances unrelated to the convenience of the parties' that clearly disfavor a transfer or dismissal."  Id. (quoting Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tx., 571 U.S. 49, 52 (2013)).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or

division to which all parties have consented." 28 U.S.C. §

1404(a). Because a valid forum selection clause "should be

given controlling weight in all but the most exceptional cases,"

the traditional Section 1404(a) analysis is altered if there is

an operative forum selection clause. Atlantic Marine, 571 U.S.

at 51.

First, a plaintiff's choice of forum merits no weight. In

re McGraw-Hill, 909 F.3d at 57. Second, the court should not

consider the private interest factors, and "[i]nstead, 'a

district court may consider arguments about the public-interest

factors only.'" Id. (quoting Atlantic Marine, 571 U.S. at 64).

Third, when a case is transferred due to a forum selection

clause, "a § 1404(a) transfer of venue will not carry with it

the original venue's choice-of-law rules." Id. (quoting Atl.

Marine, Inc., 571 U.S. at 64).

## C. Analysis

### i. D&D Action

Daneker & Dean's principal arguments are that transfer to

the Eastern District of Michigan would be more inconvenient for

the parties and witnesses to litigate the case than it would be

if the case stayed in New Jersey. (Case No. 20-13838, ECF No.

20 at 9-10.) However, the Court need not address either of

these arguments as they are both "private interest factors" not

properly before the Court where there is a valid forum selection

clause. See Atlantic Marine, 571 U.S. at 64 ("When parties

agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient . . . .").

The Broker Agreement between Daneker & Dean and Defendant Trion includes the following clause titled "Controlling Law, Jurisdiction and Venue," which states:

> This Agreement shall be construed and interpreted in accordance with the laws of the State of Michigan without regard to conflict of law principles. The Company and the Participant each irrevocably consents to the exclusive jurisdiction of the courts of the State of Michigan located in the County of Oakland, and of the United States District Courts for the Eastern District of Michigan for the purposes of any suit, action, or proceeding relating to or arising out of this Agreement and irrevocably waives, to the fullest extent it may effectively do so, any objection it may have to the jurisdiction or venue of any proceeding in any such court, and the defense of any inconvenient forum to the maintenance of any proceeding in any such court.

(Case No. 20-13838, ECF No. 1 at 29 ¶9.7)

Daneker & Dean does not dispute the validity of the forum selection clause. Instead, Daneker & Dean asks this Court for "the forum selection clause [to] be ignored because of the unique factors." (Case No. 20-13838, ECF No. 20 at 3.) Daneker & Dean argues the forum selection clause should be ignored because the clause has no relation to Daneker & Dean's tortious interference cause of action, which is based on facts that pre-date the parties entering into the Broker Agreement. (Id. at 10-11.) Daneker & Dean further contends, in a conclusory

fashion, that even if this Court did hold the forum selection clause applicable that "the Court could justify refusing to give the clause controlling weight because this is an 'exceptional case.'" (Id. at 12-13.)  Following this conclusory argument, Daneker & Dean fails to include any analysis why this is in fact an exceptional case that warrants this Court to ignore the parties forum selection clause.  (Id.)

In regard to Daneker & Dean's argument that this is an exceptional case where the forum selection clause should be ignored, D&D Defendants highlight that Daneker & Dean has "failed to identify a single case where exceptional factors (allegedly similar to those here) caused a court to disregard the parties preselected forum."  (Case No. 20-13838, ECF No. 22.)  This Court finds Daneker & Dean has not satisfied its burden of demonstrating this is an "exceptional case" as Daneker & Dean does not even provide any analysis on this issue and instead merely refers the Court to the Panaserve, LLC's opposition Memorandum of Law in the Panaserve action, which also fails to provide a detailed analysis of the public factors.

As noted, the Supreme Court has instructed district courts that they "may consider arguments about public-interest factors only" when dealing with a valid forum selection clause. Atlantic Marine, 571 U.S. at 66.  "The Supreme Court recognized that because public interest factors—the only factors that remain to be balance—'will rarely defeat a transfer motion, the

17

practical result is that forum-selection clauses should control

except in unusual cases.'"  In re McGraw-Hill Global Educ.

Holdings LLC, 909 F.3d 48, 57 (3d Cir. 2018) (quoting Atlantic

Marine, 571 U.S. at 63).  This Court has reviewed Daneker &

Dean's opposition brief and the opposition papers Daneker & Dean

directed us to in the Panaserve action and conclude they barely

provide any analysis regarding the public factors, which are at

the heart of the analysis for the D&D action.

Where, as here, there is a valid forum-selection clause,

the "party seeking to avoid a forum-selection clause has the

burden of establishing that public interests disfavoring the

transfer outweigh the parties' choice." Manopla v. Raymours

Furniture Co., Inc., No. 17-7649, 2018 WL 3201800, at *2 (D.N.J.

June 29, 2018)(citing Atlantic Marine, 571 U.S. at 581-82).

Daneker & Dean's attempt — or lack thereof — to meet this burden

falls short.  Moreover, after conducting its own analysis into

this issue, the Court concludes Daneker & Dean cannot satisfy

its burden of demonstrating this an exceptional case where the

public interests outweigh the parties' choice to litigate this

dispute in the Eastern District of Michigan.

First, with respect to the enforceability of the judgment

factor, "when both forums are federal district courts, this

factor has little relevance because it is unlikely that there

would be any significant difference in the difficulty of

enforcing a judgment rendered by one federal forum or the

other." DGVault, LLC v. Dunne, No. 18-14152, 2020 WL 57876, at
*6 (D.N.J. Jan. 6, 2020) (quoting Moore's Federal Practice —
Civil § 111.13).  Accordingly, the Court finds that this factor
is neutral.

Second, this Court finds the practical considerations
factor slightly weighs against transfer because litigating in
Michigan would make it more difficult to gather witnesses, which
Daneker & Dean argues are primarily found in the New Jersey
area.  Nevertheless, as D&D Defendants note, many of the records
at issue that are central to the Daneker & Dean's claims are
located in Michigan.  Accordingly, the Court finds the practical
consideration factor slightly weighs against transfer.

Third, Michigan may be in a position to more quickly and
efficiently adjudicate this matter than New Jersey.  For
instance, as most recently reported, the District of New Jersey
has 32,019 pending cases, while the Eastern District of Michigan
has 4,043 pending cases.  See U.S. Courts, Federal Judicial
Caseload Statistics tbl. C (March 31, 2019),
https://www.uscourts.gov/statistics/table/c-1/federal-judicial-
caseload-statistics/2019/03/31 (last visited March 16, 2021).
Furthermore, the District of New Jersey currently has four
judicial vacancies, while the Easter District of Michigan has
just one vacancy.  See Current Judicial Vacancies, USCOURTS.GOV,
https://www.uscourts.gov/judges-judgeships/judicial-
vacancies/current-judicial-vacancies (last visited June 27,

2021). It therefore appears very likely that transfer to the Eastern District of Michigan may shorten the time for resolution of this matter. Accordingly, this factor ways in favor of transfer.

Fourth, the Court recognizes the present dispute may implicate local interests because Daneker & Dean's principal place of business is located in New Jersey and the Broker Agreement was performed in New Jersey. However, the Court finds the local interests equally support Michigan as well. "Michigan is the home to [D&D Defendants'] headquarters and thus it has an interest in regulating and protecting its businesses just as much as New Jersey does." Decoration Design Sols., Inc. v. Amcor Rigid Packaging USA, Inc., No. 20-2667, 2020 WL 6482696, at *9 (D.N.J. Oct. 26, 2020). Accepting Mr. Hopkins declaration that Trion's Florida office is headquarters to the operations that are relevant to this litigation, this Court also finds such a fact important for this analysis and concludes this suggests Florida has local interests in regulating and protecting its businesses just as much as New Jersey and Michigan. Moreover, the Court finds decisions applying Michigan law impact Michigan citizens. Consequently, Michigan's "citizens have a stake in the outcome and the jury should be chosen from their numbers." Foster v. Marriott Resort Hosp. Corp., No. 17-12901, 2018 WL 3360763, at *2 (D.N.J. July 10, 2018). Accordingly, the Court finds the local interest factor is neutral.

Fifth, with respect to public policies, this Court has previously agreed that "the public policy both in New Jersey and in Michigan favors enforcement of contractual forum selection clauses." Ashraf Ebid v. Global Futures & Forex, Ltd., No. 10-4372, 2010 U.S. Dist. LEXIS 123596, *17 (D.N.J. Nov. 22, 2010). Accordingly, this factor favors transfer.

Sixth, it is undisputed that Michigan law will apply to at least 4 of the 5 claims at issue in the D&D action. "While district courts are frequently called upon to interpret and apply the law of a state other than that in which they sit, when considering a motion to transfer venue, a 'diversity case should be decided by the court most familiar with the applicable state law.'" Domtar AI, Inc. v. J.D. Irving, Ltd., No. 14-0727, 2014 WL 1679713 (E.D. Pa. Apr. 28, 2014); see also Foster, 2018 WL 3360763, at *3 (considering motion to transfer from New Jersey to Florida and finding that, "while a district court sitting in diversity is able to interpret any state's law, a Florida court will be more familiar with Florida negligence law"). Accordingly, this Court finds that the public factors do not outweigh the parties' choice to litigate this dispute in Michigan.[4]

---

[4] This Court notes Trion I and Trion II are not parties to the Broker Agreement that includes the relevant forum selection clause. Daneker & Dean does not argue the forum selection cannot be enforced by these two defendants given they are not parties to the forum selection clause. For completeness purposes, this Court finds it is important to still address why

In response to Daneker & Dean's tortious interference argument, D&D Defendants' argue that Daneker & Dean's reading of the forum-selection clause is too narrow and the language in the Broker Agreement was intentionally broad as it explains the court of Michigan have exclusive jurisdiction over any suit, action or proceeding *relating* to the Broker Agreement. (Case No. 20-13838, ECF No. 22 at 3.) D&D Defendants argue the "tortious interference claim, of course relates to the Broker Agreement as the alleged conduct giving rise to the claim certainly dictated the comprehensive language governing the responsibilities and conduct of the parties that was ultimately memorialized in the written Broker Agreement." (Id.)

---

the forum selection clause may be enforced by Trion I and Trion II. As recently decided by a judge of this Court in Mehta v. Angell Energy, No. 18-2319, 2019 WL 4750142 (D.N.J. Sept. 30, 2019), the four-step analysis in In re: Howmedica does not apply when the closely related parties doctrine is applicable to determine whether non-signatories to an agreement with a forum selection clause may be bound by the clause and enforce such clause. Id., 2019 WL 4750142, at *5. As alleged in the Complaint, Trion I and Trion II are wholly owned subsidiaries of Defendant Trion, who is the party to the Broker Agreement, and thus are closely related parties to the contract. Moreover, as this Court has previously found, enforcement of a forum selection clause in the Broker Agreement "was foreseeable because [Trion I and Trion II are] direct subsidiary[ies] of" Trion. Id. at 7. Finally, the Court finds that it is undisputed that at least four of the five claims in the D&D action are within the scope of the forum section clause. This Court finds that the forum selection clause applies to Trion I and Trion II, the non-signatory defendants. As a result, the Court finds that the forum selection clause is applicable and enforceable with respect to all D&D Defendants.

This Court need not decide this issue however because even
if the forum-selection clause did not govern Daneker & Dean's
tortious interference claim, the Court finds that it is in the
interest of judicial economy that this claim also be transferred
to the Eastern District of Michigan.  Daneker & Dean's tortious
interference claim is factually similar to Claims I-II and IV-V
in that all of Daneker & Dean's claims are centered on the
parties' business relationship.  As such, all five counts of the
D&D action will involve similar questions of both law and fact,
as well as the same witnesses and documents.  Moreover, "courts
faced with similar situations have transferred cases where only
certain claims are governed by the forum selection clause in the
interest of judicial efficiency and economy."  Faloni & Assocs.,
LLC v. Citibank, N.A., No. 19-9494, 2019 WL 5206058, at *5
(D.N.J. Oct. 16, 2019) (citing McCusker v. Hibu PLC, No. 14-
5670, 2015 WL 1600066, at *4-5 (E.D. Pa. Apr. 8, 2015) (finding
that "the interests of judicial economy weigh in favor of
transferring the entire action to the parties' selected forum"
where claims subject to the forum selection claims were
factually related to a claim not governed by the clause)).

Therefore, the Court will grant D&D Defendants' Motion to
Transfer this case to the Eastern District of Michigan.  For
this reason, the Court finds it does not need to address D&D
Defendants' alternative arguments in support of dismissing
Daneker & Dean's Complaint.  However, the Court will grant

Daneker & Dean's Motion to Extend Time Nunc Pro Tunc, which was filed in response to D&D Defendants' argument in support of dismissal. D&D Defendants' Motion to Dismiss was based on the fact that Daneker & Dean failed to amend its Complaint to cure the jurisdictional defects within the allotted fifteen-day time period. (Case No. 20-13838, ECF No. 15 at 8.) Counsel for Daneker & Dean acknowledges he inadvertently missed the deadline and his filing error was unusual given his experience practicing. (Case No. 20-13838, ECF No. 20 at 3-4.) Counsel for Daneker & Dean also highlights his error did not result in any prejudice whatsoever to the D&D Defendants. (Id.) This Court finds Daneker & Dean's arguments persuasive and will accordingly grant Daneker & Dean's Motion for Extension Nunc Pro Tunc.

### ii. **Panaserve** Action

As noted above, Section 1404(a) allows transfer to "any other district" where a plaintiff could have originally brought the action. 28 U.S.C. § 1404(a). Panaserve Plaintiffs primarily argue transfer to Michigan is not warranted because it is more convenient for the Mr. Hopkins and non-party witnesses for the case to be litigated in New Jersey. Section 1404(a) authorizes transfer "if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action." Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970). So long as the claim "might have

24

been brought" in the transferee court, transfer is authorized. 28 U.S.C. § 1404(a).

Panaserve Plaintiffs argue the Panaserve action could not have been brought in Michigan because "[u]nder the venue statute, this action could not and cannot be maintained in the state of Michigan because a core Defendant, Mark Davidoff, who arguably had the most interaction with the Plaintiffs since the 2014 SAA incepted, is not a resident of Michigan, he is domiciled in Florida." (Case No. 19-16496, ECF No. 44-5 at 8.) Panaserve Plaintiffs then further provide analysis regarding why venue and personal jurisdiction over the Panaserve Defendants is proper in the State of New Jersey. (Id.) In response, Panaserve Defendants clarify the "basis for venue in in [sic]] the Eastern District of Michigan is not that all Defendants reside in the District but that 'a substantial part of the events or omissions giving rise to the claim occurred' in the District." (Case No. 19-16496, ECF No. 45 at 2.)

This Court agrees this case may have been brought in the Eastern District of Michigan pursuant to 28 U.S.C. 1391(b) and Panaserve Plaintiffs' focus on the inapplicability 28 U.S.C. 1391(a) and the fact that venue is proper in New Jersey does not mean venue is not also proper in the Eastern District of Michigan. As Panaserve Defendants highlight, the actions/omissions of the Panaserve Defendants "which are based on payments from Michigan using paperwork and accounting

25

prepared by Defendants in Michigan, form the basis of the causes of action in the Amended Complaint." (Id. at 2.) Moreover, this Court finds personal jurisdiction over Mr. Davidoff would have been proper in the Eastern District of Michigan. "Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional Due Process requirements, and thus, the two questions become one." Hahn v. Costway LLC, No. 20-12396, 2020 U.S. Dist. LEXIS 207687, *9 (E.D. Mich. Nov. 6, 2020) (quoting Sports Authority Michigan, Inc. v. Justballs, Inc., 97 F.Supp.2d 806, 810 (E.D. Mich. 2000)). The Sixth Circuit "promulgated a three-prong test that not only guides the determination of whether specific jurisdiction exists, but also protects the due process rights of a defendant." Id. (quoting Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005)). The Southern Machine provides,

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Intera Corp., 428 F.3d at 615 (quoting S. Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968)). "In step one, '[t]he purposeful availment requirement serves to protect a defendant from being haled into a jurisdiction by virtue of

26

'random,' 'fortuitous,' or 'attenuated' contacts.'" Id.
(quoting Intera Corp., 428 F.3d at 616 (internal citations
omitted)). "'Purposeful availment may exist' as a result of
telephone calls and facsimiles regarding the underlying action
sent by the Defendant into the forum state." Id. "[W]hen the
operative facts of the controversy arise from the defendant's
contacts with the state,' the second prong is satisfied." Id.
at *9-10 (quoting Calphalon Corporation v. Rowlette, 228 F.3d
718, 723 (6th Cir. 2000)). "If prongs one and two of Southern
Machine test are satisfied, then there is an inference that the
reasonableness prong is satisfied as well." Id. at *10 (quoting
Intera Corp., 428 F.3d at 618).

The Court first agrees Mr. Davidoff purposefully availed
himself in Michigan. In a sworn declaration, Mr. Davidoff
explains he on an almost daily basis communicated with Trion
employees and officers at the Michigan headquarters via
telephone and email. Mr. Davidoff would even travel to
Michigan, prior to the COVID-19 pandemic, to perform his duties
and that he was physically present in Michigan during one or
more conversations with his Michigan colleagues regarding the
Strategic Alliance Agreement. Moreover, during the course of
Trion's relationship with Panaserve Plaintiffs under the
Strategic Alliance Agreement, Mr. Davidoff would communicate
with his colleagues in Michigan regarding "matters related to
the Agreement," which "included reviewing potential new accounts

27

submitted by Panaserve and the profitability of existing accounts." (ECF No. 56-1 at ¶¶ 6-7, 10.) Mr. Davidoff further communicated to Michigan residents regarding the Senior Transportation Account, the dispute over the amount of Panaserve's gross payrolls between Panaserve and Trion, and the negotiations of contracts between Trion and Rob Langer and Jim Maconaghy. (Id. ¶¶11-14.)

Moving to the second prong, the Court finds the second prong is satisfied because "the operative facts of the controversy arise from [Mr. Davidoff's] contacts with the state." Hahn, 2020 U.S. Dist. LEXIS 207687, at *10 (quoting Calphalon Corporation, 228 F.3d at 723 (6th Cir. 2000)). Thus, there is an inference that the reasonableness prong is satisfied and the Court concludes the third step is ultimately met. The Court finds the burden on Mr. Davidoff to litigate this case in the Eastern District of Michigan is slight given his role as Chief Sales Officer of a Michigan corporation and his involvement via in person, telephone, and emails in Michigan with the conduct that underlies Panaserve Plaintiffs' causes of actions. Accordingly, the Court concludes this case may have been brought in the Eastern District of Michigan.[5]

---

[5] The Panaserve Plaintiffs do not dispute that personal jurisdiction over the other Panaserve Defendants would have been proper in the Eastern District of Michigan. In their opposition papers, Panaserve Plaintiffs did not explicitly argue that personal jurisdiction over Mr. Davidoff would have been improper in the Eastern District of Michigan; however, this Court found

This Court's analysis now moves to weighing the private factors. First, a plaintiff's forum choice generally is entitled to deference. See Jumara, 55 F.3d at 880. However, "the existence of a related action in another district is a sound reason for favoring transfer when the venue is proper there, even though the transfer conflicts with the plaintiff's choice of forum." Employees' Ret. Sys. of the City of St. Petersburg v. Teva Pharm. Indus., No. 19-2711, 2019 WL 5485549, at *6 (E.D. Pa. Oct. 8, 2019) (citing Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc., No. 09-2552, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009)). This Court

---

the Panaserve Plaintiffs' focus on where Mr. Davidoff resided and Defendants' failure to address whether personal jurisdiction over Mr. Davidoff would have been proper in the Eastern District of Michigan sufficient to warrant supplemental briefing on this issue before issuing this Opinion. In response to Panaserve Defendants' supplemental briefing, Panaserve Plaintiffs attack the Panaserve Defendants' inclusion of Mr. Davidoff's declaration and still seem to be focused more on Mr. Davidoff's involvement from Florida into New Jersey rather than disputing his involvement into Michigan as well. While this Court does not rule on whether personal jurisdiction is proper in this District over Mr. Davidoff, the Court finds it important to note that just because personal jurisdiction may be proper over Mr. Davidoff in the District of New Jersey that does not necessarily lead to the conclusion that personal jurisdiction over Mr. Hopkins could not also be proper in the Eastern District of Michigan. The Court has considered both Mr. Hopkins and Mr. Davidoff's declaration in this ruling and notes its request for supplemental briefing was not limited to briefing on the law. It was unclear whether personal jurisdiction over Mr. Davidoff would have been proper in the Eastern District of Michigan. Thus, the purpose of the supplemental briefing was to provide the Court with facts and law for the Court to ultimately conclude whether this action may have originally been brought in the Eastern District of Michigan.

finds litigating substantially similar claims in the same district as the D&D action favors transfer.

Second, a majority of Panaserve Plaintiffs' claims center around the alleged breach of the Strategic Alliance Agreement. "In a breach of contract case, courts 'consider several specific factors that relate to where the claim arose, including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred.'" Hassett v. Beam Suntory, Inc., No. 19-8364, 2019 WL 6888406, at *3 (D.N.J. Dec. 18, 2019) (quoting Advanced Technologies and Installation Corp. v. Nokia Siemens Networks US, L.L.C., No. 9-6233, 2010 WL 3522794, at *8 (D.N.J. Sep. 2, 2010)).

The Strategic Alliance Agreement was negotiated by emails from Mr. Hopkins and his attorney in New Jersey as well as Mr. Vanderburg and Mr. Davidoff in the State of Florida. (Case No. 19-16596, ECF No. 44-1 at 4 n.1.) Mr. Hopkins does declare that the Michigan officers were briefly involved in the initial negotiation of the SAA via email from such office. (Id. at 28.) The Strategic Alliance Agreement was performed in New Jersey, where Panaserve Plaintiffs was located. Panaserve Plaintiffs allege that the Panaserve Defendants breached the Strategic Alliance Agreement by failing to pay commissions, which Panaserve Plaintiffs claim they were entitled to under the Strategic Alliance Agreement. The decision not to award

30

Panaserve Plaintiffs commissions occurred in Michigan and partially in Florida through the decisions of Mr. Vanderburg and Mr. Davidoff, to the extent they were involved in the final decision to breach the Strategic Alliance Agreement. Therefore, the alleged breach occurred in Michigan and potentially Florida. Just because the result of the harm was felt by Panaserve Plaintiffs mostly in New Jersey does not mean that is where the breach occurred. Stalwart Capital, LLC v. Warren Street Partners, LLC, No. 11-5249, 2012 WL 1533637, *4 (D.N.J. Apr. 30, 2012) ("Where a party has failed to make a payment, the locus of the action is where the party failed [to] take that action rather than where the result is felt." (citing Cottman Transmission Systems, Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994)). Moreover, as Panaserve Plaintiffs note, a majority of the causes of action that relate to Mr. Vanderburg and Davidoff's actions occurred from Trion's offices in Florida. (Case No. 19-16496, ECF No. 44-1 17.) Accordingly, this Court finds this factor is neutral as the claims arose in New Jersey, Michigan, and Florida.

Third, in considering the "convenience of the parties" district courts should focus on the relative physical and financial condition of the parties. See Jumara, 55 F.3d at 879. Given Mr. Hopkins' physical condition this Court finds the convenience of the parties weighs against transfer. However, as Panaserve Plaintiffs note, this factor is temporarily diluted in

light of current pandemic procedures where most litigation
proceedings will be conducted remotely.  Accordingly, this Court
does not find this factor heavily weighs against transfer.

Fourth, in regard to the convenience of the witnesses,
"[Defendant] has not shown the unavailability of [the relevant]
witnesses in New Jersey.  There is no indication that 'any
witnesses would be unable or unwilling to travel to [this
District], which is the sole relevant consideration for this
factor.'"  MaxLite, Inc. v. ATG Elecs., Inc., 193 F. Supp. 3d
371, 394 (D.N.J. 2016) (citing Jumara, 55 F.3d at 879).  In
regard to the non-party witnesses Panaserve Plaintiffs focus on,
Panaserve Plaintiffs explain these individuals likely reside in
the New Jersey area or Florida.  However, "[w]hile New Jersey
[and Florida] appears more convenient . . . for these non-party
witnesses, Plaintiff also fails to represent that [these]
witnesses are only available in the New Jersey [and Florida]
forums."  Hassett, 2019 WL 6888406, at *5 (emphasis in
original).  The Court also agrees this factor is likely not as
relevant at this time given a majority of litigation proceedings
may be conducted virtually.

Also, as Panaserve Plaintiffs note, several of the
witnesses in the D&D action and Panaserve action overlap.  This
Court has already concluded that transfer of the D&D action is
proper.  Accordingly, this Court finds the witnesses "will be
spared much inconvenience by being called to testify in a single

trial in a single location." In re Seroquel XR (Extended Release Quetiapine Fumarate) Litig., No. 19-8296, 2020 U.S. Dist. LEXIS 145615, *15-16 (S.D.N.Y. Aug. 12, 2020) (quoting Bent v. Zounds Hearing Franchising, LLC, No. 15-cv-6555, 2016 U.S. Dist. LEXIS 3617, 2016 WL 153092, at *7 (S.D.N.Y. Jan. 12, 2016)).

Moreover, the fact that the documents pertinent to the case are located in Michigan, is inapposite, as they could easily be produced "in the age of electronic discovery." MaxLite, Inc., 193 F. Supp. 3d at 394; see also Jumara, 55 F.3d at 879 (limiting convivence of location of books and records "to the extent that the files could not be produced in the alternative forum"). Therefore, with regard to witness convenience and location of records, the Court finds that neither forum is more convenient than the other. As to transfer, these factors are neutral.

The Court's analysis now focuses on the public interest factors. "Courts in this Circuit have frequently held that the pendency of a related or similar case in another forum is a powerful reason to grant a motion for a change of venue." Am. Inst. for History Educ., LLC v. E-Learning Sys. Int'l LLC, No. 10-2607, 2010 WL 4746233, at *3 (D.N.J. Nov. 16, 2010)(collecting cases). "Transferring a case when related lawsuits are pending elsewhere, 'serves not only private interests but also the interests of justice because it

33

eliminates the possibility of inconsistent results and conserves judicial resources.'" Id. (quoting CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc., 309 F. Supp. 2d 637, 651 (D.N.J. 2004)). "Specifically, such a transfer allows for pretrial discovery to be conducted more efficiently, saves witnesses time and money, both with respect to pretrial and trial proceedings, avoids duplicative litigation, thereby eliminating unnecessary expense to the parties, and at the same time serves the public interest and avoids inconsistent results." Id. In Continental Grain Co. v. Barge FBL-585, the Supreme Court noted that "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent." 364 U.S. 19, 26 (1960). "This court frequently has heeded this admonition and transferred a case to another forum when a related action was pending there." CIBC World Mkts., Inc., 309 F. Supp. 2d at 651 (collecting cases).

As explained above, this Court found transfer of the D&D action to the Eastern District of Michigan pursuant to the parties' forum selection of the clause was warranted. As demonstrated by Plaintiffs' own Motions to Consolidate in both the Panaserve and D&D Action, it is undisputed these actions involve substantially similar factual and legal issues and involve similar discovery and witnesses. It is therefore clear

34

that litigation of the <u>Panaserve</u> action will be more efficient and expeditious if transferred to the Eastern District of Michigan, the same location of the <u>D&D</u> action. Accordingly, this court concludes considerations of judicial efficiency, convenience and expense heavily warrant a transfer.

In addition, as detailed above in Section C.i., several of the public factors either weigh in favor of transfer or are neutral. The main public factor that slightly weighs against transfer is the practical considerations that could make the trial easy, expeditious, or inexpensive as majority of the witnesses are in the New Jersey area as well as in Florida. Because this Court finds the balancing of the public and private factors weighs in favor of transferring this case to the Eastern District of Michigan, this Court will grant Panaserve Defendants' Motion to Transfer.[6] For this reason, the Court will

---

[6] This Court additionally rejects Panaserve Plaintiffs' argument that its proposed voluntary dismissal of Mr. Stone, Mr. Upshaw, Trion III, Trion IG, and Trion SS essentially moots any connection of this dispute with Michigan. (Case No. 19-16496, ECF No. 44 at 4.) As Panaserve Defendants highlight, Trion, the party that entered into the Strategic Alliance Agreement with Panaserve is headquartered in Michigan and the records which Panaserve Plaintiffs demand an accounting of are currently located in Michigan. Similarly, "[a]ll fees paid to Panaserve were processed by Trion in Michigan and paid from its Michigan office" and "all monthly Gross Profit Margin reports of the clients obtained by Panaserve that were used to calculate the fees owed to Panaserve were also created and processed by Trion at its Michigan office." (Case No. 19-16496, ECF No. 40-4 at 21.) Moreover, as detailed above, the public factors and private factors weigh in favor of transferring this matter even without consideration of these defendants.

not address Panaserve Defendants' alternative arguments in support of dismissing Panaserve Plaintiffs' Amended Complaint.

## CONCLUSION

For the reasons stated above, the Court will grant Defendants' Motions to Transfer Venue (Case No. 19-16496, ECF No. 40; Case No. 20-13838, ECF No. 15) and grant Daneker & Dean's Motion for Extension of Time to File the Second Amended Complaint <u>Nunc</u> <u>Pro</u> <u>Tunc</u> (Case No. 20-13838, ECF No. 20.)  In light of the Court's ruling, Daneker & Dean and Panaserve Plaintiffs' Motions to Consolidate the two actions (Case No. 19-16496, ECF No. 48; Case No. 20-13838, ECF No. 20) and Panaserve's Motion for Trial Preference, will be dismissed without prejudice as more appropriate for the transferee court to consider if such motions are renewed in that District.

An appropriate Order will be entered.


Date: June 28, 2021      s/ Noel L. Hillman
At Camden, New Jersey    NOEL L. HILLMAN, U.S.D.J.